**Marianne HENRY, Appellant–
Petitioner,**

v.

**Michael W. HENRY, Appellee–
Respondent.**

No. 02A03–0106–CV–203.

Court of Appeals of Indiana.

Nov. 28, 2001.

Robert L. Nicholson, Beckman Lawson LLP, Fort Wayne, IN, Attorney for Appellant.

Suzanne Hampton Wagner, Robert W. Eherenman, Haller & Colvin, Fort Wayne, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

Appellant-petitioner Marianne Henry, appeals the trial court's judgment in favor of her former husband, appellee-respondent Michael W. Henry, with respect to the division of marital property. Specifically, she argues that the trial court was obligated to consider and value Michael's unvested interest in certain stock options through his employer that he had not exercised, but could have, as of the final hearing date on the petition for dissolution.

*FACTS*

The facts most favorable to the judgment are that the parties were married on May 17, 1986. Michael was employed by the General Electric Company (GE) as an

engineer, and was earning an annual base salary of $63,000. As part of his compensation with the company, Michael periodically received stock options. The options were not forfeitable upon death, disability, lay-off or sale of a business unit. Rather, the long-term incentive plan implemented by GE provided that an employee's unexercised stock options granted in 1994 and 1995 would immediately expire if voluntary termination of employment or termination for cause occurred. The terms of various stock options that were granted to Michael in 1993 contained a similar provision. The options issued during those years were subject to unilateral termination by GE.

On March 12, 1993, GE granted Michael five hundred options at a price of $86.50 per share. Five hundred additional options were extended to him on March 25, 1994, at a price of $102.125, and 750 more options were given to Michael on February 10, 1995, at an option price of $52.125. All options were exercisable as of the date of the final hearing.

On September 10, 1998, Marianne filed a verified petition for dissolution of the marriage. By agreement of the parties, Michael exercised a number of the stock options after the petition was filed. Specifically, those "cashed in" options after tax totaled $19,377.40 in 1998, $18,589 in 1999, and $6073.25 in 2000. The remaining options had not been exercised as of the time of the final hearing.

At the time of the dissolution, Marianne was employed as the director of a nursing home facility, earning $42,000 per year. A final hearing on the petition was conducted on November 21, 2000. The evidence showed that on November 20, 2000, Michael's existing stock options had increased to a total of 13,369 shares as a result of certain stock splits that had occurred. The potential gain on the outstanding shares, if all stock options were exercised, totaled $582,681.

Michael filed a motion requesting findings of fact and conclusions of law. After hearing the evidence, the trial court found that Michael had not exercised certain stock options that were available to him from GE. Thus, those options were not considered part of the marital estate. The court concluded that the unexercised stock options were excluded from the marital pot because Michael's interest in the options was "unvested." That is, the options were subject to future forfeiture. Appellant's App. at 13. Although the trial court did not include the stock options as marital property, it determined that this additional compensation to Michael from the company constituted "an economic circumstance . . . rebutting the presumption that an equal division of the parties' marital estate is just and reasonable." Appellant's App. at 15. As a result, the trial court awarded 75% of the property to Marianne and the remaining 25% to Michael. Marianne now appeals, claiming that all of the stock options extended to Michael should have been included as marital property because those options could have been exercised as of the final hearing date.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that when a trial court has entered findings of fact and conclusions of law pursuant to a party's request, we engage in a two-tiered standard of review. We must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1299–1300 (Ind.Ct. App.1998). The court's findings and judgment will not be reversed unless clearly erroneous. *Id.* at 1300. Findings of fact are clearly erroneous when the record

lacks any facts or reasonable inferences from the evidence to support them. *Id.* The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In making these determinations, we will neither reweigh the evidence nor judge witness credibility, but we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.*

When, as here, the court has made special findings pursuant to a party's request under Ind. Trial Rule 52(A), this court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). Before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences drawn from the findings. *Id.*

### II. Marianne's Claims

Marianne asserts that the trial court abused its discretion when it declined to include all of Michael's GE stock options as part of the marital estate. Thus, she attacks the findings regarding this issue and asserts that the trial court erroneously determined that Michael could keep the value of the stock options for himself and elect not to exercise them until after the dissolution became final.

In addressing Marianne's contention, we first turn to the provisions of IND. CODE § 31–9–2–98,[1] which provide in relevant part that:

    (b) Property ... means all the assets of either party or both parties, including:

        (1) a present right to withdraw pension or retirement benefits;

    (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested.

We have had the occasion to interpret the above statute as it relates to stock options in *Hann v. Hann,* 655 N.E.2d 566 (Ind.Ct.App.1995), *trans. denied.* In *Hann,* the husband's employer granted him a stock option concurrent with the commencement of his employment in July 1989. *Id.* at 568. These options were terminated by the company on February 21, 1990, and replaced with others. *Id.* The parties were separated on January 17, 1994, and the husband filed his petition to dissolve the marriage on January 31, 1994. *Id.* at 567. The husband's employer had extended remaining stock options to him prior to the date of the parties' final separation. Those options were "unmatured," meaning that the options were not exercisable at the time of the dissolution. They were also "unvested," in that the options were subject to forfeiture if the party dies or his employment is terminated. *Id.* at 569 n. 1. In other words, those options were wholly contingent on the party's future employment with the company, and the only possibility of obtaining the value of the options was by virtue of the husband's continued employment.

After the petition for dissolution was filed, the husband filed a motion for summary judgment seeking a determination, as a matter of law, that only vested stock options that were exercisable on the date of filing the dissolution petition should be considered as marital property subject to division. *Id.* at 567. The trial court granted the motion and determined that "only the vested stock options granted to the petitioner by employer, ... that are exercisable upon the date of filing or that

---

1. Formerly, IND. CODE § 31–1–11.5–2(d).

become exercisable before the entry of the decree of dissolution on September 12, 1994, are marital property subject to division by the Court." *Id.* In affirming the trial court's judgment, we noted that only property in which the party has a vested interest at the time of dissolution may be divided as a marital asset. *Id.* at 569. Specifically, this court determined:

> The stock options not exercisable as of the date of separation, and which will become exercisable at a particular date in the future conditioned upon Daniel's continued employment, are not subject to division as marital property.... [T]he treatment most consistent with the statutory scheme currently in place in Indiana is to classify only those stock options granted to an employee by his or her employer which are exercisable upon the date of dissolution or separation which cannot be forfeited upon termination of employment as marital property.

*Id.* at 571 (emphasis supplied). In arriving at such a conclusion, the *Hann* court relied upon *In re Marriage of Evans,* 85 Ill.2d 523, 55 Ill.Dec. 529, 426 N.E.2d 854, 857 (1981), wherein the supreme court of Illinois determined that:

> The personal right of an employee to receive future payments from his employer is not susceptible to being divided in the same sense that real estate or personal property may be. Again, if the payment of benefits is contingent upon future events, such as the continuation of employment, a present award based on the discounted value of future payments to the employed spouse will prove excessive if the amount of benefits which he actually receives is less than the amount which was assumed.

Applying the terminology used in *Hann,* it is apparent that the options granted to Michael in this circumstance have "ma-tured," inasmuch as he could have exercised them and converted the options to cash prior to the final hearing. Unlike *Hann,* Michael's stock options are subject only to limited circumstances of forfeiture, including termination of employment. They are not forfeited in the event of his death or disability. Therefore, while the options may have been both unmatured and unvested in *Hann,* such is not the case here. The only "contingency" to obtain the value of the options for the benefit of the marital estate was Michael's actual exercise of them. As a result, we find the circumstances here more akin to those presented in *Harvey v. Harvey,* 695 N.E.2d 162, 165 (Ind.Ct.App.1998), where this court determined that a husband's present right to withdraw retirement benefits fell within the definition of marital property subject to division in the dissolution proceedings. So, inasmuch as Michael had a present right to exercise the GE stock options and obtain their benefit up to the time of the final dissolution hearing, it was error for the trial court not to have included the values of the GE options in the marital estate.

■ Finally, we note that in some instances, the trial court's exclusion of certain property from the marital estate may constitute harmless error. For instance, in *Lulay v. Lulay,* 591 N.E.2d 154, 156 (Ind.Ct.App.1992), we determined that the trial court erred in not including portions of the husband's pensions in the marital pot. Although the exclusion of this property amounted to an unequal division of the marital property, we deemed the error harmless because it was apparent from the record that the trial court explained the reasons for awarding the husband the pension values. *Id.* at 156. Moreover, it went on to clarify why an equal division of the property to the parties was not just and reasonable under the circumstances. *Id.*

We cannot say the same here, however. Specifically, the record in this case does not reveal any precise method used in valuing Michael's stock options. Moreover, the trial court should make a determination as to the tax consequences that each party must bear with respect to the options when their values are ultimately divided. As a result, we are compelled to reverse the trial court's judgment and remand this cause to the trial court with instructions that it value Michael's unexercised stock options,[2] consider the tax consequences attributable to each party and divide that property in a just and reasonable manner between the parties.

As a final note, while we remand for the trial court to value and allocate the stock options to the parties, the previous "economic circumstances" justifying an award to Marianne of 75% of the marital estate no longer exist. Put another way, the trial court may determine that Marianne is no longer entitled to this percentage of the marital assets in light of our determination that the stock options should have been included in the marital pot.

Reversed and remanded for further proceedings consistent with this opinion.

FRIEDLANDER, J., and ROBB, J., concur.

---

2. We would suggest that the value of Michael's options be determined by the difference between the "striking price," which is typically the market price when the option was written, and the value of the stock on the day of the final hearing, times the total number of shares involved.