**Craig E. CAPEHART, Appellant–Petitioner,**

v.

**Lynn Dee Barker CAPEHART, Appellee–Respondent.**

No. 49A02–9802–CV–151.

Court of Appeals of Indiana.

Feb. 10, 1999.

Rehearing Denied April 6, 1999.

Craig E. Capehart, Indianapolis, Indiana, Attorney for Appellant.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Craig E. Capehart appeals the property division and child support portions of the trial court's December 2, 1997 order dissolving his marriage to Lynn Barker–Capehart. Craig raises four issues on appeal, which we restate as:

I.   Whether the trial court improperly excluded a $23,000 liability from the marital estate.

II.  Whether the trial court awarded child support in excess of the Child Support Guidelines by requiring Craig to maintain a life insurance policy on his daughter's behalf.

III. Whether the trial court erred by imputing income to the husband.

IV.  Whether the trial court erred by crediting Craig only fifty-two weeks, instead of seventy weeks, of child support overpayment.

We affirm and remand with instructions.

Craig and Lynn were married on December 29, 1988, and a child was born of the marriage in 1989. Craig filed a petition for dissolution on April 4, 1996. The trial court

entered a dissolution decree on December 2, 1997; this appeal ensued. Additional facts are provided as needed.

■ The trial court entered specific findings of fact and conclusions of law at the request of a party.[1] Where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).[2] Before affirming a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences reasonably drawn from the findings. *Id.* at 924. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind.Ct.App. 1996), *trans. denied.* The judgment will be reversed only when clearly erroneous. *De-Haan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

## I.

### Division of Marital Property

Craig argues that the trial court erred by excluding a $23,000 liability from the marital estate. As of the date of the dissolution petition, Craig owed approximately $23,000 to Sallie Mae. The trial court found that this debt was incurred by Craig prior to the marriage in order to pay his higher education expenses. The trial court refused to consider the debt as part of the marital estate, and the court ordered that Craig be solely responsible for it. Craig contends that this was error.

■ When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *Keller v. Keller,* 639 N.E.2d 372, 373 (Ind.Ct. App.1994), *trans. denied.* We consider only the evidence most favorable to the trial court's disposition of the property. *Id.* We will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Id.*

■ IND.CODE § 31–15–7–4(b) (Supp.1997) (formerly IC 31–1–11.5–11) requires the trial court to divide marital property in a just and reasonable manner. Marital property includes property owned by either spouse prior to the marriage. IC 31–15–7–4(a)(1). Marital property also includes both assets and liabilities. *Dusenberry v. Dusenberry,* 625 N.E.2d 458, 461 (Ind.Ct.App.1993).

■ The trial court concluded that the Sallie Mae debt was not a marital debt because Craig had incurred the debt before the marriage in order to finance his higher education. This conclusion was error. Liabilities incurred by one spouse prior to the marriage are marital property subject to division by the court. *Dusenberry,* 625 N.E.2d at 461; IC 31–15–7–4. Therefore, the trial court erred by concluding that the Sallie Mae debt was not a marital debt.

■ Lynn argues that the trial court's failure to consider the Sallie Mae debt a marital debt was harmless. Although IND. CODE § 31–15–7–5 (Supp.1997) (formerly IC 31–1–11.5–11) requires the trial court to presume that an equal division of the marital property between the parties is just and reasonable, the trial court may deviate from this presumption if a party presents relevant evidence that rebuts it. *Chase v. Chase,* 690

---

1. The record does not include this request; however, the parties agree that such a request was made.

2. Craig contends that the *Mitchell* standard of review does not apply to all cases where special findings have been requested by a party pursuant to T.R. 52(A). Craig's argument is without merit.

N.E.2d 753, 756 (Ind.Ct.App.1998). IC 31–15–7–5 specifies that rebuttal evidence may include evidence establishing that the property was acquired before the marriage.

In *Lulay v. Lulay,* 591 N.E.2d 154 (Ind.Ct. App.1992), we held that the trial court's failure to include a marital asset in the marital pot for division was harmless error. *Id.* at 155–56. In *Lulay,* the trial court excluded portions of the husband's pensions, acquired before the marriage, from the marital pot. The trial court awarded the pensions to the husband because they had been acquired before the marriage and the wife had made no contribution to their acquisition. *Id.* We held that exclusion of the pensions from the marital pot was error, but that the trial court's explanation of its reasons for awarding the pensions to the husband supported an unequal division of the marital property. *Id.* at 156.

■ Here, the trial court found that Craig incurred the Sallie Mae debt prior to the marriage in order to pay for his higher education. Based upon this conclusion, the court determined that Craig should be solely responsible for the debt. Like the wife in *Lulay,* Lynn did not contribute to the acquisition of this debt. The fact that this debt was incurred for Craig's benefit prior to the marriage and that Lynn made no contribution towards its acquisition rebuts the presumption that an equal division of the marital property is just and reasonable. *See Roberts v. Roberts,* 670 N.E.2d 72, 77 (Ind.Ct.App. 1996), *trans. denied* (observing that trial court properly ordered husband solely responsible for law school debt incurred during the marriage).

Craig contends that the trial court's decision not to include the marital debt in the marital pot for division cannot be harmless because the trial court also found that no justification existed for deviating from the statutory presumption of an equal division. Craig argues that we must reverse, and on remand, order the trial court to divide the Sallie Mae debt equally between the parties. We disagree. The trial court specifically found: "The Court finds that the assets and debts listed above in Paragraphs 27 and 29 should be divided on an equal basis and that

no reason exists to justify a deviation from the statutory 50/50 presumption." Record at 82. The Sallie Mae debt was not listed in paragraphs 27 and 29. Thus, in holding that no justification existed for deviating from an equal division, the trial court did not consider the Sallie Mae debt. Furthermore, it is apparent from the trial court's finding that the Sallie Mae debt was incurred for Craig's benefit prior to the marriage that the trial court believed an unequal allocation of the parties' debts was justified.

We hold that the trial court's failure to include the Sallie Mae debt in the marital pot for equal division was harmless. We direct the trial court on remand to amend the dissolution decree in a manner consistent with our holding that the Sallie Mae debt is marital property and that an unequal division of the marital property is just and reasonable.

## II.

### *Child Support*

Craig contends that the trial court ordered him to pay child support in excess of the amount specified by the Indiana Child Support Guidelines. Utilizing the formula prescribed by the child support guidelines, the trial court ordered Craig to pay a certain amount of weekly child support. In addition, the trial court ordered Craig to maintain a life insurance policy on his own life, which names his daughter as the beneficiary. Craig contends that the premiums he is required to pay for the life insurance policy are in the nature of child support, and as such, he is being required to pay child support in an amount that exceeds the amount established by the guidelines.

■ A trial court's calculation of a child support obligation pursuant to the child support guidelines is presumptively valid. *Harris v. Harris,* 690 N.E.2d 742, 746 (Ind. Ct.App.1998). Reversal of a trial court's child support order is merited only where its determination is clearly against the logic and effect of the facts and circumstances. *Id.* A deviation from the child support guidelines will be affirmed if the deviation is supported by proper written findings justifying it. *Id.*

■ When a trial court orders a parent to maintain a life insurance policy on his life for the child's benefit, the court is ensuring future support is available for the child in the event that the parent dies. *Kirk v. Kirk,* 434 N.E.2d 571, 574 (Ind.Ct.App.1982). Thus, Craig is correct that requiring him to maintain a life insurance policy on his daughter's behalf is in the nature of child support. *See also, Hunter v. Hunter,* 498 N.E.2d 1278, 1292 (Ind.Ct.App.1986); *Allen v. Allen,* 477 N.E.2d 104, 107 (Ind.Ct.App.1985). However, ensuring that a child has adequate *future* support in the event of a parent's death, by requiring the parent to maintain a life insurance policy, differs from ensuring that a child has adequate *current* support by requiring the non-custodial parent to pay a portion of his weekly income to the custodial parent. The child support guidelines are addressed to the latter type of support, not to the former.[3]

■ Moreover, the child support guidelines make no provision for the adjustment of the weekly support obligation where a parent is paying life insurance premiums for the child's benefit. This is significant because the child support guidelines do permit adjustments for certain parental expenses, including an adjustment for a parent who pays health insurance premiums on behalf of the child. Indiana Child Support Guideline 3. We conclude that the trial court did not deviate from the child support guidelines by ordering Craig to maintain a life insurance policy on his own life for his daughter's benefit.

### III.

#### Imputed Income

Craig contends that the trial court erred by finding that his weekly income was $970. Craig argues that the trial court imputed his income, and that pursuant to the child support guidelines, income may only be imputed where the trial court finds that the parent is unemployed or underemployed and that the parent's status is voluntary. The trial court did not find that Craig was unemployed or underemployed. Therefore, Craig argues that the trial court erred by finding that he had a weekly income greater than the $460 he reported on his financial declaration.

The trial court found that Craig deposited more than $218,000 in his personal checking account during the twenty-three month period prior to the final hearing. The average weekly deposit during this time period was $2,212.97. Based upon this and other evidence, the trial court found that Craig's weekly income was $970. Craig contends that the trial court incorrectly applied the child support guidelines in determining this amount.

■ Assuming without deciding that the trial court incorrectly applied the child support guidelines, we will not reverse the trial court's finding regarding Craig's income. Where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). Weekly gross income of a parent includes income from any source, except as specifically excluded by the child support guidelines. Child Support Guideline 3(A)(1). Here, the trial court found that Craig made an average weekly deposit of over $2,200 into his personal checking account. The trial court found that part of this $2,200 consisted of loans, gifts, and business expenses, and ultimately concluded that the husband's weekly income was $970. This conclusion is supported by the trial court's findings. Accordingly, we will not reverse.

### IV.

#### Overpayment of Child Support

During the July 29, 1996 preliminary hearing, the trial court ordered Craig to pay $23.38 per week in order to cover his share of the cost of his daughter's medication. Craig contends that he continued to pay this amount until the court entered its dissolution

---

3. The guidelines ensure that a child has adequate *current* support by requiring support equal to the share of a parent's income that would have been spent on the child if the parents and child continued to live in the same household. *See* Indiana Child Support Guideline 1.

decree on December 2, 1997. On that date, the trial court established Craig's child support and ordered that his weekly support be reduced by $23.38 for a one year period. The trial court ordered the reduction based upon Lynn's testimony that her daughter's medication had been covered by her insurance and that Craig was entitled to credit for one year of payments. Craig contends that the trial court should have ordered a reduction for seventy weeks instead of fifty-two weeks since he paid for the medication from July 29, 1996 until December 2, 1997.

The record is inadequate to address this issue. Craig identifies nothing in the record indicating that he actually paid the additional eighteen weeks of support. Matters outside the record cannot be considered by the court on appeal. *Zapffe v. Srbeny*, 587 N.E.2d 177, 180 (Ind.Ct.App.1992), *trans. denied.* Any conclusion by this court that Craig in fact paid more than one year of additional support for the medication would be based upon speculation. Craig's argument is waived.

We affirm and remand with instructions.

RILEY, J., and BROOK, J., concur.