**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK S. LENYO**
South Bend, Indiana



FILED

Feb 14 2014, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS W. DEMEESTER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1305-DR-228 |
| | ) | |
| REBECCA DEMEESTER, | ) | |
| | ) | |
| Appellee-Respondant. | ) | |

APPEAL FROM THE SAINT JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-1201-DR-19

**February 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Thomas DeMeester (Husband) appeals from the trial court's order dissolving his marriage to Rebecca DeMeester (Wife). Husband raises the following issues on appeal:

1.      Did the trial court abuse its discretion in dividing the marital estate?

2.      Did the trial court abuse its discretion in valuing certain marital assets?

3.      Did the trial court abuse its discretion in ordering Husband to pay ninety-three percent of the parties' daughter's educational expenses?

We affirm in part, reverse in part, and remand with instructions.

Husband and Wife were married in 1997 and had one child. During the course of the marriage, Wife worked at Franciscan Alliance and Husband worked as a journeyman plumber and pipe fitter. Husband managed the couple's finances and took responsibility for filing their tax returns. Unbeknownst to Wife, Husband did not file their joint income tax returns from 2008 through 2011, resulting in the accumulation of a substantial tax liability. Although Husband or his accountant prepared tax returns for 2008, 2009, and 2010, and Husband presented the returns to Wife for her signature, he subsequently failed to file them. Because federal and state taxes were withheld from Wife's paychecks, the tax liability arose from Husband's failure to pay taxes on income earned while operating his own business.

On January 26, 2012, Wife filed a petition for dissolution of marriage. A final hearing was held on January 23, 2013, at which Husband admitted to failing to timely file income tax returns from 2008 through 2011. At the time of the final hearing, the total outstanding tax liability was approximately $29,000, which included $3,403 in assessed penalties due to Husband's failure to timely file tax returns. Husband testified that once he filed the returns and determined his tax liability, he entered into a payment plan with the IRS, but he failed to

2

make payments as required. Wife testified that she was unaware that taxes were owed until she was informed by her employer that the IRS was making arrangements to garnish her wages. At the conclusion of the final hearing, the trial court took the matter under advisement.

A final decree of dissolution was issued on April 11, 2013, in which the trial court concluded that Wife had rebutted the presumption in favor of an equal division of the marital estate by providing evidence of Husband's dissipation of marital assets. Husband was awarded his tools, which were valued "between $3,000 and $30,000", and two Chevy pickup trucks, one a 1972 and the other a 1999, neither of which was assigned a specific value because no evidence concerning their value was presented to the trial court. *Appellant's Appendix* at 20. Husband was also assigned sole responsibility for paying the outstanding tax liability. Wife was awarded a 1994 Ford Mustang, the value of which also was unknown, and a 2006 Buick Rendezvous, which had a value of approximately $7,000 and was subject to a $7,161.64 car loan, for which Wife was made solely responsible. Wife was also awarded as her sole property her 403(b) plan, which had a value of $8,158.20, as well as her pension, which would pay $298.67 per month once she reached the age of 65. Additionally, Husband was ordered to pay ninety-three percent of the parties' daughter's school expenses. Husband now appeals. Additional facts will be provided as necessary.

Before reaching the merits of Husband's appeal, we observe that Wife has not filed an appellate brief. Under these circumstances, we apply a less stringent standard with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.*, 966 N.E.2d 143

3

(Ind. Ct. App. 2012), *trans. denied*. When an appellee fails to submit a brief, we may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.* But even under the prima facie error standard, we are nevertheless obligated to correctly apply the law to the facts in the record to determine whether reversal is warranted. *Tisdale v. Bolick*, 978 N.E.2d 30 (Ind. Ct. App. 2012).

The trial court in this case entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Accordingly, our standard of review is two-tiered: first, we determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213 (Ind. 2012). We view the evidence in the light most favorable to the judgment and defer to those findings if they are supported by the evidence or any legitimate inferences flowing therefrom. *Id.* Legal conclusions, on the other hand, are reviewed de novo. *Id.*

1.

Husband first argues that the trial court abused its discretion by ordering an unequal distribution of the marital estate. We review a challenge to the trial court's division of marital property for abuse of discretion, and we consider only the evidence favorable to the judgment. *Capehart v. Capehart*, 705 N.E.2d 533 (Ind. Ct. App. 1999). The trial court will be reversed only if its judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Id.* A party challenging a trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Wanner v. Hutchcroft*, 888 N.E.2d 260 (Ind. Ct. App.

4

2008).

"In Indiana, it is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to the parties' final separation, or acquired by their joint efforts." *Trabucco v. Trabucco*, 944 N.E.2d 544, 553 (Ind. Ct. App. 2011), *trans. denied*. Although a trial court may ultimately determine that a particular asset should be awarded to one spouse, it must first include the asset in the marital estate to be divided. *Trabucco v. Trabucco*, 944 N.E.2d 544. Ind. Code Ann. § 31-15-7-4 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.), provides that in a dissolution of marriage action the court shall divide the marital property in a just and reasonable manner. Furthermore, I.C. § 31-15-7-5 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) provides the court shall presume an equal division of the marital property is just and reasonable, but further provides the presumption may be rebutted by a party who presents relevant evidence. I.C. § 31-15-7-5 lists the following factors relevant to a trial court's decision to deviate from the presumptive 50-50 split:

1. The contribution of each spouse to the acquisition of the property regardless of whether the contribution was income producing;
2. The extent to which the property was acquired by each spouse before the marriage or through inheritance or gift;
3. The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such period as the Court considers just to the spouse having custody of any children;
4. The conduct of the parties during the marriage as related to the disposition or dissipation of their property;
5. The earning or earning ability of the parties as related to
    (A) a final division of property; and

5

(B) a final determination of the property rights of the parties.

In this case, the trial court found that evidence of Husband's dissipation of marital assets justified a deviation from the presumption in favor of a 50-50 split of marital property. "Waste and misuse of marital assets are the 'hallmarks of dissipation.'" *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1094 (Ind. Ct. App. 2011) (quoting *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind. Ct. App. 2001)). We review a trial court's finding of dissipation for an abuse of discretion, and will therefore reverse only where the trial court's finding is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Id.* "The test for dissipation is whether the assets were actually wasted or misused." *Balicki v. Balicki*, 837 N.E.2d 532, 540 (Ind. Ct. App. 2005), *trans. denied*. As a general matter, dissipation "involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations." *Id.*

As an initial matter, we note that Husband incorrectly asserts that "husband's failure to file tax returns is the sole basis for the trial court deviating from the presumptive equal division of the marital estate." *Appellant's Brief* at 13. A review of the trial court's findings reveals that the trial court's finding of dissipation was based on Husband's failure to file and pay taxes *and* his failure to make mortgage payments. Specifically, the trial court found that an unequal distribution of the marital estate was fair and equitable "based upon Husband's dissipation of marital assets by failing file/pay taxes from 2008 through 2011, and for failing to make the monthly mortgage payment leading to a foreclosure on the marital residence,

6

which then resulting [sic] in Wife's need to seek bankruptcy relief." *Appellant's Appendix* at 21. Husband does not dispute the trial court's conclusion that his failure to make mortgage payments constituted dissipation of marital property, which standing alone would be sufficient to justify its deviation from the presumptive 50-50 split.

Furthermore, we find Husband's argument that his failure to file tax returns did not amount to dissipation of marital assets unconvincing. According to Husband, he did not waste or misuse marital funds; instead, he claims that "the evidence suggests that this family was simply living beyond their means and spending more money than they made." *Appellant's Brief* at 15. We note, however, that the evidence most favorable to the trial court's ruling reveals that Husband was solely responsible for managing the family's financial affairs. Indeed, Wife testified that during the marriage, her paychecks were deposited directly into the parties' joint bank account, and before purchasing groceries or household goods, she would call Husband to make sure funds were available. Thus, if the family was living beyond its means, it would appear to be due largely to Husband's mismanagement of their finances. Moreover, even assuming that the family simply could not afford to *pay* its income tax obligations, the family's poor financial situation did not excuse Husband from *filing* the tax returns as required by law. Husband's failure to file income tax returns resulted in penalties in the amount of $3,403, which is a significant amount relative to the total marital estate in this case. For all of these reasons, we cannot conclude that the trial court abused its discretion in determining that Husband dissipated marital assets so as to justify a deviation from the presumptive equal division of marital property.

7

2.

Next, Husband argues that the trial court abused its discretion in valuing the tools Husband accumulated over the years while working as a plumber and pipe fitter. The trial court has broad discretion in determining the value of property in a dissolution action, and its valuation will be disturbed only for an abuse of that discretion. *Trabucco v. Trabucco*, 944 N.E.2d 544. "If the trial court's chosen valuation is within the range of values supported by the evidence, the court does not abuse its discretion." *Balicki v. Balicki*, 837 N.E.2d at 536.

The trial court valued the tools "between $3,000 and $30,000." *Appellant's Appendix* at 20. Neither party obtained an appraisal of the tools or even set forth comprehensive inventory of the tools in Husband's possession. Accordingly, the trial court's valuation was based solely on the testimony of Husband and Wife. Wife testified that she believed the tools were worth approximately $30,000, and that she had come to this conclusion by speaking to Husband's former business associates. Husband testified that his tools were worth $3,000 to $5,000. Even Husband's counsel characterized Husband's valuation as a "guesstimate." *Transcript* at 63. In light of the fact that the only evidence presented to the trial court concerning the value of the tools was the self-serving testimony of the parties, the court declined to choose a specific value. Instead, the trial court found that the value fell somewhere between $3,000 and $30,000—that is, somewhere in the range of the parties' testimony.

Husband argues that the trial court should have accepted his valuation of the tools and disregarded Wife's because, as a plumber since the age of seventeen, he has an adequate

8

basis upon which to value the tools, and that Wife lacks the requisite expertise. Husband's argument is a request to reweigh the evidence and judge the credibility of the witnesses, which we will not do on appeal. Moreover, even if we were inclined to reweigh the evidence, we note that in dividing the marital estate, the trial court acknowledged that the value of the tools might be as low as $3,000. It is therefore apparent that the trial court would have ordered the same ultimate property distribution even if it had considered only Husband's testimony. Because we have already concluded that the trial court's unequal distribution of the marital estate was not an abuse of discretion, any alleged error in considering Wife's valuation was harmless.

3.

Finally, Husband argues that the trial court erred in ordering him to pay ninety-three percent of the parties' daughter's school-related expenses. Specifically, the trial court's order contained the following language: "The Husband and Wife shall share the children's primary and secondary educational expenses for the children pursuant to their income share percentages (i.e. Husband to pay 93% and Wife to pay 7%). These expenses shall include tuition, books, supplies, school-sponsored activities, and extracurricular activities." *Appellant's Appendix* at 22.

Based on our review of the record, it appears that the trial court's order in this regard was the result of a typographical error. First, the order twice makes reference to the "children," but Husband and Wife have only one child. Additionally, based on our review of the record, it appears that Husband's income share percentage for child support purposes is

9

much lower than ninety-three percent. By agreement of the parties, the trial court ordered Husband to pay support in the amount of $101 per week (plus an additional $29 toward his outstanding support arrearage). This support order was a continuation of a previously entered provisional order, which was apparently based on a proposed Child Support Obligation Worksheet submitted by Wife, which listed Husband's and Wife's gross weekly incomes as $622.00 and $807.00, respectively. Thus, Husband's income share percentage was listed as 43.53% and Wife's was listed as 56.47%. Moreover, the trial court noted in its dissolution decree that Husband's and Wife's incomes were similar, which is inconsistent with the lopsided percentages specified elsewhere in the decree. For all of these reasons, we conclude that Husband has met his burden of establishing prima facie error with respect to the trial court's order requiring him to pay 93% of the child's primary and educational expenses "pursuant to [the parties'] income share percentages." *Id.* at 22. Accordingly, we reverse that portion of the trial court's order and remand with instructions to reconsider the parties' responsibility for the child's primary and secondary educational expenses or to clarify the basis for its decision in that regard.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., and BAILEY, J., concur.